UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY LEMONT McINTOSH,<br><br>Petitioner,<br><br>v.<br><br>JAMES A. YATES,<br><br>Respondent. | No. 2:11-cv-00609 TLN AC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California State Prisoner proceeding in pro per pursuant to 28 U.S.C. § 2254. The action proceeds on the petition for writ of habeas corpus filed on March 4, 2011. ECF No. 1. Respondent has filed answer, ECF No. 17, and petitioner has filed a traverse, ECF No. 22.

FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged in Sacramento County Superior Court with attempted first-degree residential burglary; first-degree residential burglary; and possession of drug paraphernalia. The information alleged that petitioner had suffered three prior convictions for serious or violent felonies, and that he had served a prior prison term. The special allegations were bifurcated. Petitioner pled no contest to the paraphernalia charge.

Trial on the burglary charges was by jury. The evidence established that on January 19, 2007, Gerald Montoya saw petitioner at the back window of his home, with a knife, and called 911. An officer responding to the call saw petitioner five or six blocks from the Montoya

1

residence. A search of petitioner uncovered a knife, jewelry, an iPod, a laptop computer, and cash. These items had been stolen from a nearby home two days prior.

The jury returned a guilty verdict on July 3, 2008. Jury trial was then held on the prior-conviction and prison-term allegations, which the jury found true. Petitioner was sentenced on July 31, 2008 to a "three-strikes" sentence of 25 years to life on each count, consecutive, plus enhancements that resulted in a total sentence of 50 years to life plus 31 years.

The judgment was affirmed by the California Court of Appeal on September 14, 2009. Lodged Doc. B. The California Supreme Court denied review on December 2, 2009. Petitioner filed no applications for collateral relief in state court.

On March 4, 2011, petitioner filed a petition for writ of habeas corpus in this court. ECF No. 1. The warden answered on the merits, asserting no procedural defenses. Respondent agrees that the claims are exhausted and the petition timely. ECF No. 17 at 6.[1]

## STANDARDS GOVERNING FEDERAL HABEAS REVIEW

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." <u>Bradley v. Duncan</u>, 315 F.3d 1091, 1101 (9th Cir. 2002)

---

[1] Citations to court documents refer to the page numbers assigned by the court's electronic docketing system.

2

1  (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent
2  may constitute "clearly established Federal law," but circuit law has persuasive value regarding
3  what law is "clearly established" and what constitutes "unreasonable application" of that law.
4  Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044,
5  1057 (9th Cir. 2004).

6  A state court decision is "contrary to" clearly established federal law if the decision
7  "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams, 529 U.S. at
8  405.  A state court decision "unreasonably applies" federal law "if the state court identifies the
9  correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the
10 particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court was incorrect
11 in the view of the federal habeas court; the state court decision must be objectively unreasonable.
12 Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).  This does not mean, however, that the § (d)(1)
13 exception is limited to applications of federal law that "reasonable jurists would all agree is
14 unreasonable."  Williams, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive
15 interpretation of "unreasonable application" clause).  State court decisions can be objectively
16 unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to
17 give appropriate consideration and weight to the full body of available evidence, and when they
18 proceed on the basis of factual error.  See, e.g., Williams, 529 U.S. at 397-98; Wiggins, 539 U.S.
19 at 526-28 & 534; Rompilla v. Beard, 545 U.S. 374, 388-909 (2005); Porter v. McCollum, 130 S.
20 Ct. 447, 454 (2009).

21 Relief is also available under AEDPA where the state court predicated its adjudication of
22 a claim on an unreasonable factual determination.  Section 2254(d)(2).  The statute explicitly
23 limits this inquiry to the evidence that was before the state court.  An unreasonable determination
24 of facts exists where, among other circumstances, the state court made its findings according to a
25 flawed process -- for example, under an incorrect legal standard, or where necessary findings
26 were not made at all, or where the state court failed to consider and weigh relevant evidence that
27 was properly presented to it, or where petitioner was denied the opportunity to present evidence.
28 See Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).  A

factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding.  See, e.g., Wiggins, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constituted unreasonable determination of fact).

To prevail, a habeas petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre-AEDPA standards.  Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc).  There is no single prescribed order in which these two inquiries must be conducted.  Id. at 736-37.  The AEDPA does not require the federal habeas court to adopt any one methodology.  Lockyer v. Andrade, 538 U.S. 63, 71 (2003).

## DISCUSSION

### I.     The State Court's Adjudication Of Petitioner's Claims

All three of petitioner's claims were adjudicated on the merits on direct appeal.  Because the state supreme court denied discretionary review, Lodged Doc. D, the opinion of the California Court of Appeal is the adjudication that must be reviewed for reasonableness under § 2254(d). See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).  Because the appellate court adjudicated the claim in a reasoned opinion, Lodged Doc. B, review under § 2254(d) is confined to "the state court's actual reasoning" and "actual analysis." Frantz, 533 F.3d at 738 (emphasis in original).

### II.    Shackling Claim

#### A.  Petitioner's Allegations

During jury selection, defense counsel moved to strike the panel on grounds that prospective jurors had seen petitioner being escorted to the courtroom in handcuffs.  The trial court denied the motion, but later questioned the panel at the request of counsel and determined that none of the prospective jurors had seen petitioner.  On the next court day, it was discovered that one prospective juror had seen defendant going down the courthouse stairs.  The defense moved for a mistrial, which was denied.  Defense counsel subsequently used a peremptory challenge to remove the juror who had observed petitioner in handcuffs.

4

B. <u>The Clearly Established Federal Law</u>

The visible shackling of a criminal defendant during trial can impair the presumption of innocence and the fairness of the trial in violation of due process. <u>Illinois v. Allen</u>, 397 U.S. 337, 344 (1970); <u>Deck v. Missouri</u>, 544 U.S. 622, 630-31 (2005). Even visible restraints, however, do not violate due process when they are "justified by an essential state interest" such as courtroom security. <u>Holbrook v. Flynn</u>, 475 U.S. 560, 568-69 (1986). Prior to ordering that a defendant be shackled during trial, therefore, due process requires a trial court determination that such restraints are necessary with regard to the specific defendant. <u>Id.</u> at 568. Where a court without adequate justification orders the defendant to wear shackles that will be seen by the jury, actual prejudice need not be demonstrated to make out a due process violation. <u>Deck</u>, 544 U.S. at 635. The prejudice from unjustified visible shackling during trial is inherent. <u>Id.</u> at 634 (quoting <u>Holbrook</u>, 475 U.S. at 568).

C. <u>The State Court's Ruling</u>

The California Court of Appeal analyzed the issues as follows:

> "A trial court should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged, and we use the deferential abuse of discretion standard to review a trial court ruling denying a mistrial." (<u>People v. Silva</u> (2001) 25 Cal.4th 345, 372.) When denying the claim that the trial court should have granted a mistrial because some of the jurors saw the defendants in handcuffs in the hall, the court in <u>United States v. Leach</u> (8th Cir.1970) 429 F.2d 956, 962, noted that the practice of handcuffing "prisoners when they are being taken from one place to another ..." is highly desirable and necessary and "the jury is aware of this." Furthermore, drawing from <u>People v. Du Bose</u> (1970) 10 Cal.App.3d 544, 549-550; <u>People v. Jacobs</u> (1989) 210 Cal.App.3d 1135, 1141; and <u>United States v. Halliburton</u> (9th Cir.1989) 870 F.2d 557, 560-561, <u>certiorari denied</u>, 492 U.S. 910 (1989), 4 Erwin et al., <u>California Criminal Defense Practice</u> (2009) Trial, chapter 80, section 80.09[6][d] notes that "A defendant may be restrained while in transit between a jail and the courtroom. If jurors happen to observe a handcuffed defendant in the hallway during transportation to and from the courtroom, prejudice is not likely to arise, and the trial court is not required to later instruct the jury that the physical restraints have no bearing on the defendant's innocence or guilt." (Fns.omitted.)
>
> The only juror who saw defendant in handcuffs in transit to the courtroom was excused from the panel by defendant's peremptory challenge. The court determined that none of the remaining prospective jurors saw defendant in handcuffs in the hallway and

5

>    defendant does not point to any contrary evidence.  Thus, defendant's mistrial argument fails.  For the same reason, the court did not abuse its discretion when it denied defendant's motion to strike the jury panel.

Lodged Doc. B at 4-5.

### D.  Objective Reasonableness Under § 2254(d)

The state appellate court did not unreasonably reject petitioner's shackling claim.  First, the trial court had not ordered petitioner shackled in the courtroom during trial.  Instead, he was handcuffed while being escorted to and from the courtroom.  The "inherent prejudice" rule of Holbrook and Deck applies to a defendant's court-ordered shackling in the courtroom during the trial.  The Supreme Court has never extended this rule to brief glimpses of a defendant outside or upon entering the courtroom.  Accordingly, no clearly established federal law requires a different result on the facts of this case.

Second, reasonable jurists applying the pertinent constitutional principles have consistently concluded that jurors' brief glimpses of a defendant in shackles or handcuffs are harmless, and fail to rise to the level of a due process violation.  See, e.g., Ghent v. Woodford, 279 F.3d 1121, 1133 (9th Cir. 2002) (jurors' occasional, brief glimpses of defendant in restraints at the entrance to the courtroom were not prejudicial); United States v. Olano, 62 F.3d 1180, 1190 (9th Cir. 1995) ("a jury's brief or inadvertent glimpse of a defendant in physical restraints is not inherently or presumptively prejudicial to a defendant"), cert. denied, 519 U.S. 931 (1996); Castillo v. Stainer, 983 F.2d 145, 148 (9th Cir. 1992) (no prejudice when, during transport to or from the courtroom, some members of the jury pool saw the defendant in shackles), cert. denied, 510 U.S. 1014 (1993); United States v. Halliburton, 870 F.2d 557, 560-62 (9th Cir.) (jurors' inadvertent observation of defendant in handcuffs in corridor did not prejudicially impair a fair trial), cert. denied, 492 U.S. 910 (1989).  The decision of the California Court of Appeal in this case is entirely consistent with the Ninth Circuit's shackling jurisprudence, and therefore cannot be considered "objectively unreasonable" within the meaning of § 2254(d).

Petitioner suggests that the trial court and/or the court of appeal made an unreasonable factual determination that only Prospective Juror No. One saw him in restraints.  Contrary to

petitioner's argument, the trial court conducted an inquiry adequate to support the finding. The judge asked the prospective jurors as a group, in general terms, whether any of them had seen petitioner outside the courtroom at any time. The form of the question did not include the information that petitioner had been handcuffed in transit. No juror gave an affirmative response. ART 42-43. Further inquiry was unnecessary, and would only have reinforced the potentially prejudicial effects of which petitioner complains.

The judge admonished the jurors that they were to draw no inferences from petitioner's custodial status. ART 43. Petitioner argues that this admonishment was itself prejudicial, but the court used standard, neutral language with no discernible prejudicial effect.[2]

On the next court day, a Monday, defense counsel reported that his client had "almost tripped over" Juror No. One on the stairway after court on Thursday afternoon. ART 165-66. The juror was questioned privately, and acknowledged encountering petitioner and his escort. ART 166. When asked to describe his observations, the juror did not mention handcuffs. ART 166-68.[3] Because Juror No. One did not serve, ART 208, his observations of petitioner's handcuffs, if any, cannot have affected the fairness of the trial.

For these reasons, the state court's adjudication of petitioner's shackling claim was not objectively unreasonable within the meaning of § 2254(d).

III.   Trial Court's Failure To Strike Prior Convictions

A. Petitioner's Allegations

Petitioner contends that the trial court committed reversible error when it mistakenly believed that it lacked discretion to strike one or more of the prior convictions that were used to enhance his sentence under California's "three-strikes" law.

---

[2] "I'm just going to also mention that Mr. McIntosh is in custody, and the fact that he is in custody should not in any way affect your decision-making process in this case. It's not evidence, just as the arrest, just as the – being brought to trial, just as the charges are not evidence that you should consider. Again, evidence is only something that comes from the witness stand, not from any other source." ART 43.

[3] Handcuffs were petitioner's only restraints. ART at 170 (making record that petitioner was escorted with hands cuffed behind back, but no chains or other restraints).

B.  The Clearly Established Federal Law

Petitioner has identified no clearly established federal law that governs his claim, and the undersigned is aware of none.

Errors of state law are not reviewable in a § 2254 proceeding.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Absent a showing of fundamental unfairness, therefore, a state court's misapplication of its own sentencing law does not support habeas relief.  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994); see also Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989) (declining to examine state court's determination that petitioner's prior conviction was for a "serious felony" for purposes of state sentencing regime).  Federal courts are "bound by a state court's construction of its own penal statutes," Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993), and this court must defer to the California courts' application of the three-strikes law unless that interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review of a constitutional violation."  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989).  The deference owed here, under the AEDPA, is even greater.  See § 2254(d).

C.  The State Court's Ruling

The court of appeal analyzed the claim exclusively as a matter of state law:

> Defendant argues the trial court's failure to strike some of defendant's prior convictions when imposing defendant's three strikes sentence constituted an abuse of discretion.  We disagree.
>
> In three strikes cases, where a proper basis exists, the trial court can exercise its discretion under Penal Code section 1385, subdivision (a), to dismiss a prior conviction allegation with respect to one count and not the other.  (People v. Garcia (1999) 20 Cal.4th 490, 503-504.)  "The judge ... may, either of his or her own motion ... in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes ...."  (§ 1385, subd. (a).)  The court in Garcia upheld the trial court's decision to strike the prior conviction allegations as to one count because the defendant's criminal activity "all arose from a single period of aberrant behavior."  (Garcia, at pp. 503-504.)
>
> Here, defendant argues the court should have struck two prior convictions with respect to one count.  However, unlike the defendant in Garcia, where the defendant's criminal activity arose from "a single period of aberrant behavior," defendant here has 24 years of criminal activity.

8

> Defendant began his criminal career in 1983 shortly after his 19th birthday and continued to be criminally active up until his arrest for this crime-nearly 24 years later. On March 7, 1983, defendant was convicted of burglary in the second degree and was placed on three years' probation. Ten days after receiving his sentence, he stole a car and was convicted of auto theft in the second degree on March 24, 1983. In 1984, defendant was convicted of auto theft in the second degree and was placed on three years' probation and sentenced to 16 months in state prison for violating probation. In 1985, he was convicted of first degree burglary and was sentenced to two years in state prison. In 1986, he was convicted of first degree burglary and was sentenced to seven years in state prison and was released on May 18, 1991. Twenty-four days later on June 11, 1991, defendant was arrested for first degree burglary and was convicted and sentenced to 15 years in state prison. Defendant was paroled on June 10, 1999, and on July 13 he was arrested and charged with being a felon in possession of a firearm, possession of drug paraphernalia, and altering the ID on a firearm; he was sentenced to eight years in prison. He was paroled in December 2005 and in June 2006, he was arrested for being in possession of drug paraphernalia and was sentenced to 17 days in county jail. Subsequently, parole was revoked and he remained in jail for six months and was released on December 26, 2006. On January 19, 2007, defendant committed the burglaries at issue. On these facts, the trial court found there was no proper basis on which it could rely to strike any of the strikes.
>
> Defendant offers some possible factors the court could have used as justification for striking the strikes. However, a possible drug dependency, an undocumented allegation of possible mental health issues, and the alleged nonviolent nature of the current crimes do not outweigh 24 years of criminal activity such that two strikes had to be dismissed.
>
> We exercise a deferential standard of review of the trial court's decision. (People v. Garcia, supra, 20 Cal.4th at p. 503.) The trial court's refusal to strike any of the strikes was not an abuse of discretion.

Lodged Doc. B at 6-9.

### D.  Objective Reasonableness Under § 2254(d)

The court of appeal's decision is not contrary to or an unreasonable application of any clearly established federal law. As noted above, no decision of the United States Supreme Court establishes a federal constitutional right to have prior offenses disregarded under state recidivist sentencing regimes. In Ewing v. California, 538 U.S. 11 (2003), the Supreme Court found no constitutional error in a California trial court's failure to exercise the discretion to treat a wobbler as a misdemeanor for purposes of three-strikes sentencing. Ewing suggests that the trial court's

1  exercise of discretion here was equally unconstrained by federal law.[4]

2  The state appellate court found that the trial court had, contrary to petitioner's framing of
3  his claim here, exercised the discretion given to it by California law. Lodged Doc. B at 6 ("The
4  Court Exercised Informed Discretion When Imposing Defendant's Three Strikes Sentence"). To
5  the extent that this conclusion constitutes a factual finding within the meaning of § 2254(d)(2), it
6  is a reasonable determination because fully supported by the record. See RT 459-60 (discussing
7  decision not to strike priors).[5] The court of appeal's recitation of petitioner's criminal history is
8  consistent with the record that was before that court. See CT 206-242 (probation report,
9  including attachments documenting criminal history). The state courts' evaluation of the criminal
10 history as it weighed in the exercise of sentencing discretion was not objectively unreasonable.

11 For these reasons, Claim Two presents no basis for federal habeas relief.

12 IV.   Cruel And Unusual Punishment

13    A.   Petitioner's Allegations

14 Petitioner contends that his sentence of 50 years to life plus 31 years violates the Eighth
15 Amendment prohibition of cruel and unusual punishment, because the sentence is
16 disproportionate to his offense.

17    B.   The Clearly Established Federal Law

18 The Eighth Amendment prohibits not only "barbaric punishments," Solem v. Helm, 463
19 U.S. 277, 284 (1983), but also "extreme sentences that are 'grossly disproportionate' to the
20 crime," Ewing v. California, 538 U.S. 11, 23 (2003) (quoting Harmelin v. Michigan, 501 U.S.
21 957, 1001 (1991) (Kennedy J., concurring)). The Supreme Court has upheld California's three-

---

[4] Ewing presented a substantive Eighth Amendment challenge to the sentence. Petitioner's Eighth Amendment claim, to which Ewing is more directly relevant, is considered next.

[5] Petitioner quotes out of context the sentencing judge's statement, "[I]s there a way to strike the strikes?" Petitioner contends this statement reflected the judge's lack of understanding that he had the authority to strike the strikes. The record as a whole belies that contention. While the judge did note that "this is a large sentence for what would normally be a property crime," he also explained why he concluded that the sentence was appropriate. The judge clearly expressed his understanding that "if there's a reason to strike the strikes, the court can do it." He concluded that, given petitioner's criminal history, "I just can't find a legal justifiable reason to strike any of those strikes . . ." RT 459-60.

strikes sentencing law against facial Eighth Amendment challenge. Ewing, 538 U.S. at 25-28. Accordingly, it is clearly established that a life sentence for a relatively minor offense committed by a recidivist does not per se violate the Eight Amendment. Id. Individual claims that a third-strike sentence violates the Eighth Amendment are governed by proportionality principles that do not merely weight the sentence against the offense conduct, but also take into account the state's legitimate interest in dealing harshly with recidivists. Id. at 29-30.

The Supreme Court's Eighth Amendment jurisprudence clearly establishes that a "gross disproportionality principle" applies to sentences for terms of years. Lockyer v. Andrade, 538 U.S. 63, 72 (2003). Such a sentence will only constitute cruel and unusual punishment in "rare and extreme case[s]." Id. at 73. In Andrade, the Court rejected an Eighth Amendment claim brought by a habeas petitioner who had received a third-strike life sentence for shoplifting $150 worth of videotapes. The Court held that the California Court of Appeal's decision affirming the sentence was not contrary to, nor an unreasonable application of, Eighth Amendment principles within the meaning of § 2254(d).

C.  The State Court's Ruling

The court of appeal reasoned as follows:

> Defendant argues that the imposition of a determinate sentence of 31 years consecutively to an indeterminate sentence of 50 years to life is a sentence that is disproportionate to the crime and thus amounts to cruel and/or unusual punishment. We disagree. Although the proportionality principle "does not require strict proportionality between crime and sentence," it does prohibit "extreme sentences that are 'grossly disproportionate' to the crime ." (Ewing v. California (2003) 538 U.S. 11, 23 [155 L.Ed.2d 108, 119], quoting Harmelin v. Michigan (1991) 501 U.S. 957, 1001 [115 L.Ed.2d 836, 869].) Defendant's sentence, in accordance with precedent, constitutes a valid sentence under the Eighth Amendment to the United States Constitution and thus, does not amount to cruel and/or unusual punishment.
>
> To determine whether the current punishment may be considered cruel or unusual punishment, it is necessary to describe what is not. Sentencing an offender to a life sentence was not cruel and unusual punishment for fraudulent use of a credit card, passing a forged check, and "'felony theft,'" all crimes totaling approximately $300. (Rummel v. Estelle (1980) 445 U.S. 263, 264-266 [63 L.Ed.2d 382, 385-386].) Under the California Constitution, the imposition of a 61-year-to-life term for an offender convicted of two counts of residential burglary with two prior convictions for the same offense

11

was not cruel or unusual punishment. (People v. Ingram (1995) 40 Cal.App.4th 1397-1398, 1415-1416, disapproved on another ground in People v. Dotson (1997) 16 Cal.4th 547, 559, 560, fn. 8.) A sentence of 25 years to life for a felon in possession of a handgun who had two prior robbery convictions was not cruel or unusual punishment. (People v. Cooper (1996) 43 Cal.App.4th 815, 828.) Under California's three strikes law, it was not cruel and unusual punishment to sentence a recidivist criminal to 25 years to life for stealing three golf clubs. (Ewing v. California, supra, 538 U.S. at pp. 11, 30-31 [155 L.Ed.2d at pp. 108, 123].) Decided on the same day, the court in Lockyer v. Andrade (2003) 538 U.S. 63, 66-68 [155 L.Ed.2d 144, 151-153] held that under California's three strikes law, two consecutive terms of 25 years to life were not cruel and unusual punishment for two counts of petty theft. In response to Justice Souter's dissent that this sentence was equivalent to a life term without the possibility of parole, the court noted the "argument ... misses the point. Based on our precedents, the state court decision was not contrary to, or an unreasonable application of, our clearly established law." (Lockyer, at p. 74, fn. 1 [155 L.Ed .2d at p. 157, fn. 1].)

Defendant argues that his sentence of two consecutive terms of 25 years to life and a determinate sentence of 31 years for a 44-year-old man would amount to a life sentence and this constitutes cruel and unusual punishment. If this argument were to succeed, one could foresee a 78 year old convicted of murder and sentenced to 10 years with the possibility of parole would be a life sentence and constitute cruel and unusual punishment; whereas, if the same crime were committed by a 40 year old it would fall within the parameters of the Eight Amendment. A life sentence without the possibility of parole is not equivalent to a shorter sentence simply because the offender, who receives the shorter sentence, is so old that he will assuredly die in prison. "Two different sentences do not become materially indistinguishable based solely upon the age of the persons sentenced." (Lockyer v. Andrade, supra, 538 U.S. at p. 74, fn. 1 [155 L.Ed.2d at p. 157, fn. 1].) The length of defendant's sentence does not necessarily constitute cruel and unusual punishment.

The Supreme Court acknowledges that proportionality principles guide the application of the Eighth Amendment to noncapital offenses, but the bar remains high. (Ewing v. California, supra, 538 U.S. at pp. 23-24, 30-31 [155 L.Ed.2d at pp. 119, 123].) "Recidivism is a serious public safety concern in California and throughout the Nation." (Id., at p. 26 [155 L.Ed.2d at p. 120].) In accordance with Ewing, the proportionality of defendant's sentence must be examined in the context of the intention of California's Legislature. (Id., at p. 29 [155 L.Ed.2d at p. 123].)

Defendant's sentence is long but it "reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated." (Ewing v. California, supra, 538 U.S. at p. 30 [155 L.Ed.2d at p. 123].) Defendant, like the defendant in Ewing, has had a long history of felony recidivism. He has not

12

> shown his case to be so extraordinary that it constitutes a constitutional violation. He is a career criminal who has been sentenced in accordance with the intention of the three strikes law, which punishes not only for the trigger offense but also for his status of having committed " 'repeated criminal acts that have shown that [the offender is] simply incapable of conforming to the norms of society as established by its criminal law.'" (Id., at p. 29 [155 L.Ed.2d at p. 122], quoting Rummel v. Estelle, supra, 445 U.S. at p. 276 [63 L.Ed.2d at p. 392].) It follows from precedent, the proportionality principle, and the Legislature's intent, that defendant's punishment is within the bounds of the Eighth Amendment; therefore, his sentence does not constitute cruel and unusual punishment.

Lodged Doc. B at 9-12.

### D.  Objective Reasonableness Under § 2254(d)

The Court of Appeal did not unreasonably apply Ewing and Andrade. The disproportionality alleged in this case is materially indistinguishable from that in Ewing and Andrade, both of which involved indeterminate life sentences for nonviolent property offenses. Moreover, Andrade effectively forecloses petitioner's federal habeas claim by holding that it is not unreasonable under § 2254(d) for a California appellate court to affirm a third-strike life sentence for a non-violent property offense committed by a chronic recidivist.

The rare habeas cases that fall outside the scope of Andrade involve petitioners with minimal criminal histories, who were subjected to recidivist sentencing only because of an abuse of prosecutorial discretion. See Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004) (affirming grant of habeas relief on Eighth Amendment grounds where commitment offense and two prior strike offenses, petitioner's only previous convictions, all involved simple shoplifting). That is far from the case here. As the court of appeal correctly noted, petitioner's third-strike sentence followed an unbroken 24-year criminal career. Because that history is properly considered in the proportionality analysis, Ewing, 528 U.S. at 29-30, the court of appeal did not unreasonably weigh the proportionality factors. Because the state court's resolution of the issue was not objectively unreasonable, this claim should be denied.

### CONCLUSION

For all the reasons explained above, the state court's adjudication of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS

1  RECOMMENDED that the petition for writ of habeas corpus be denied.

2      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 3, 2013

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE